IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GREAT DIVIDE INSURANCE    )   CIVIL 18-00140 LEK-RLP
COMPANY,                 )
                           )
       Plaintiff,     )
                           )
   vs.               )
                           )
HAWAIIAN KAMALI`I INC., dba )
HAWAIIAN CANOE CLUB; HAWAIIAN )
CANOE RACING ASSOCIATION;    )
KIHEI CANOE CLUB; and MARK   )
DAVID STEVENS,           )
                           )
       Defendants.    )
_____ )

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING COUNTERMOTION AND JOINDER TO THE COUNTERMOTION**

Before the Court are: 1) Plaintiff Great Divide
Insurance Company's ("Great Divide") Motion for Summary Judgment
("Motion"), filed November 8, 2018; 2) Defendants Hawaiian
Kamali`i, Inc., doing business as Hawaiian Canoe Club ("HCC"),
Hawaiian Canoe Racing Association ("HCRA"), and Kihei Canoe
Club's ("KCC" and collectively "Club Defendants") Counter Motion
for Partial Summary Judgment Re: Duty to Defend
("Countermotion"), filed December 28, 2018; and 3) Defendant
Mark David Stevens's ("Stevens") joinder of simple agreement in
the Countermotion ("Joinder"), also filed on December 28, 2018.
[Dkt. nos. 38, 49, 51.] These matters came on for hearing on
January 18, 2019. On February 5, 2019, an entering order was
issued, informing the parties of the Court's rulings. [Dkt.

no. 63.] This Order supersedes that entering order. For the reasons set forth below, Great Divide's Motion is granted and the Club Defendants' Countermotion and Stevens's Joinder are denied.

## BACKGROUND

Great Divide filed the instant action to obtain a declaratory judgment that it does not have a duty to defend nor a duty to indemnify the Club Defendants and Stevens (all collectively "Defendants") as to claims arising from a September 16, 2016 incident. [Complaint for Declaratory Judgment ("Complaint"), filed 4/17/18 (dkt. no. 1), at ¶ 9.] Great Divide filed this action pursuant to diversity jurisdiction and the Declaratory Judgment Act. [Id. at ¶¶ 6-7 (citing 28 U.S.C. §§ 1332, 2201).]

## I. The Underlying Action

The action for which Defendants sought defense and indemnification from Great Divide is a state court action filed on November 14, 2017 by Faith Ann Kalei-Imaizumi ("Kalei-Imaizumi"), her husband, and their children ("Underlying Plaintiffs"), Kalei-Imaizumi, et al. v. Stevens, et al., Civil No. 17-1-0474 ("Underlying Action"). [Concise Statement in Supp. of Motion ("Motion CSOF"), filed 11/8/18 (dkt. no. 39), at ¶ 1; Concise Statement of Facts in Supp. of Countermotion

("Countermotion CSOF"), filed 12/28/18 (dkt. no. 50), at pg. 2

(admitting Great Divide's ¶ 1).[1]]

The Complaint in the Underlying Action ("Underlying

Complaint") alleges:

-HCRA "'was an event sponsor, host and/or an organizer of the
    2016 Pailolo Challenge Outrigger Canoe Race that took place
    on September 17, 2016'" (the "2016 Pailolo Challenge" or
    "the Challenge"); [Motion CSOF at ¶ 2; Countermotion CSOF at
    pg. 2 (admitting Great Divide's ¶ 2);]

-the annual Pailolo Challenge is a twenty-six mile, outrigger
    canoe race from Kapalua, Maui to Kaunakakai, Moloka`i;
    [Motion CSOF at ¶ 3; Countermotion CSOF at pg. 2 (admitting
    that Great Divide's ¶ 3 is "accurately quoting from the
    Underlying [Complaint]"); and

-"[t]he 2016 Pailolo Challenge was the tenth time that Defendant
    HCC hosted, organized, and/or staged the event." [Motion
    CSOF at ¶ 4; Countermotion CSOF at pg. 2 (same as with
    ¶ 3)].

The state-issued, marine ocean water event permit for

the 2016 Pailolo Challenge identifies HCRA as the Challenge

sponsor. [Motion CSOF at ¶ 5; Countermotion CSOF at pg. 2

(admitting Great Divide's ¶¶ 5-22 "accurately quot[es] from the

Underlying [Complaint]," but denying those are the only relevant

allegations in the Underlying Complaint).] The Underlying Action

also alleges HCRA was the Challenge sponsor, as well as a host

and/or organizer of the Challenge. [Countermotion CSOF at ¶¶ 7-

_____

[1] The citations to the Countermotion CSOF referring to page
numbers describe the Club Defendants' responses to the Motion
CSOF, and the citations to the Countermotion CSOF referring to
paragraph numbers describe the additional statements of fact that
the Club Defendants offer in support of their request for summary
judgment.

8; Response to Countermotion CSOF ("Reply CSOF"), filed 1/4/19 (dkt. no. 53), at ¶¶ 7-8.[2]] As the Challenge host, HCC "had substantial control over and involvement in the staging of the race, including the right to hire and fire the race director and staff" and "had the right to determine and/or enforce the rules and regulations governing eligibility for and the conduct of the race." [Motion CSOF at ¶ 6; Countermotion CSOF at pg. 2.]

The Underlying Complaint alleges that, prior to the 2016 Pailolo Challenge, Stevens agreed to provide and operate an escort boat for one of the participating teams. At all relevant times, Stevens owned the "Ohana," a twenty-six-foot 2004 Twin Vee Weekender, and he "was an employee, servant and/or authorized agent of Defendants HCRA, HCC and/or KCC acting within the course and scope of that relationship." [Motion CSOF at ¶¶ 7-9; Countermotion CSOF at pg. 2.] The Ohana had a ladder between its two outboard motors, neither of which had a propeller guard. Further, the Ohana did not have a "'kill switch'" or other device to prevent the motors from operating while the ladder was deployed. [Motion CSOF at ¶ 10; Countermotion CSOF at pg. 2.]

Kalei-Imaizumi was part of the switch crew of the team whose canoe the Ohana was to escort during the 2016 Pailolo Challenge. After the crew members had boarded the Ohana, but

_____

[2] On January 7, 2019, Great Divide filed an errata to the Reply CSOF to correct a spelling error in the Reply CSOF. [Dkt. no. 55.]

4

before the Ohana began escorting the team's canoe, and while the Ohana was still in a congested race staging area, Stevens's hat flew into the water. Kalei-Imaizumi entered the water from the Ohana to retrieve the hat. As she attempted to re-board the Ohana using the ladder between the motors, the Ohana reversed and a propeller from one of the motors struck her while she was at or near the ladder. Kalei-Imaizumi suffered significant injuries, resulting in the amputation of her left leg and permanent brain injury. [Motion CSOF at ¶¶ 12-15; Countermotion CSOF at pg. 2.]

Stevens owned the Ohana. [Countermotion CSOF at ¶ 11; Reply CSOF at ¶ 11 (admitting the Club Defendants' ¶ 11).] Stevens has stated, in answers to interrogatories in the Underlying Action, that he was hired for the 2016 Pailolo Challenge by Catherine Bellafiore ("Bellafiore"). [Motion CSOF at ¶ 30; Countermotion CSOF at pg. 3 (admitting that Great Divide accurately referred to Stevens's answers to interrogatories).] The Underlying Complaint can be interpreted as alleging that KCC and/or one of its affiliates hired Stevens. [Countermotion CSOF at ¶ 12; Reply CSOF at ¶ 12.] Specifically, "[i]n her Pretrial Statement, Ms. Kalei-Imaizumi alleged that Bellafiore was 'acting as an authorized agent and/or representative of Defendant KCC (NOT HCC).'" [Countermotion CSOF at ¶ 14; Reply CSOF at ¶ 14.]

The Underlying Action includes: a negligent failure to warn claim against Stevens; a claim that Stevens was negligent or

grossly negligent in operating the Ohana; a claim that the Club

Defendants were negligent in their staging of the race; a claim

against the Club Defendants alleging they obtained insufficient

liability insurance for the 2016 Pailolo Challenge; a negligent

infliction of emotional distress claim against Defendants; and a

loss of consortium claim against all Defendants.  [Motion CSOF at

¶¶ 16-21; Countermotion CSOF at pg. 2.]

## II.  **The Policy**

During the period from April 1, 2016 to April 1, 2017,

HCC held a Commercial General Liability Insurance Policy, policy

number GC966353, issued by Great Divide ("Policy").  [Motion CSOF

at ¶ 23; Countermotion CSOF at pg. 3 (admitting Great Divide's

¶ 23); Motion CSOF, Decl. of J. Patrick Gallagher ("Gallagher

Decl."), Exh. B (Policy).[3]]  The Policy's Insuring Agreement

appears in the Commercial General Liability Coverage Form,

CG 00 01 12 04 ("CGL Form"), Section I, and states:

> a.   We will pay those sums that the insured
>      becomes legally obligated to pay as damages
>      because of "bodily injury" or "property
>      damage" to which this insurance applies.  We
>      will have the right and duty to defend the
>      insured against any "suit" seeking those
>      damages.  However, we will have no duty to
>      defend the insured against any "suit" seeking
>      damages for "bodily injury" or "property
>      damage" to which this insurance does not
>      apply.  We may, at our discretion,

---

[3] The Club Defendants do not dispute the authenticity of
Exhibit B.  See, e.g., Countermotion CSOF at ¶ 1 (citing Great
Divide's Exhibit B as evidentiary support).

6

> investigate any "occurrence" and settle any
> claim or "suit" that may result. . . .
>
> b.   This insurance applies to "bodily injury" and
>      "property damage" only if:
>
>      (1)  The "bodily injury" or "property damage"
>           is caused by an "occurrence" that takes
>           place in the "coverage
>           territory" . . . .

[Policy at 11.[4]] The term "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." [Id. at 22, ¶ 3.] The parties agree that Kalei-Imaizumi alleges she suffered a bodily injury. [Countermotion CSOF at ¶ 3; Reply CSOF at ¶ 3.[5]] The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Policy at 24, ¶ 13.]

## A.   **The Insureds**

Section II of the CGL Form states:

WHO IS AN INSURED

1.   If you are designated in the Declarations as:

     . . . .

     d.   An organization other than a
          partnership, joint venture or limited

---

[4] The Policy consists of multiple parts that are not consecutively paginated. All citations to the Policy refer to the page numbers assigned to Exhibit B by this district court's electronic filing system.

[5] This refers to the second of two paragraphs both numbered "3" in the Countermotion CSOF.

liability company, you are an insured.
Your "executive officers" and directors
are insureds, but only with respect to
their duties as your officers or
directors. Your stock holders are also
insureds, but only with respect to their
liability as stockholders.

. . . .

2. Each of the following is also an insured:

a. Your "volunteer workers" only while
performing duties related to the conduct
of your business, or your "employees",
other than either your "executive
officers" (if you are an organization
other than a partnership, joint venture
or limited liability company) or your
managers (if you are a limited liability
company), but only for acts within the
scope of their employment by you or
while performing duties related to the
conduct of your business.

[Id. at 19 (emphasis omitted).[6]] The "ADDITIONAL INSURED - CLUB

MEMBERS" endorsement, CL 239 (11/85) CG 20 02 11 85 ("Member

Endorsement"), amends Section II "to include as an insured any of

your members, but only with respect to their liability for your

activities or activities they perform on your behalf." [Id. at

27.]

Further, the "ADDITIONAL INSURED - PRIMARY AND

NONCONTRIBUTORY - AUTOMATIC STATUS WHEN REQUIRED IN CONTRACT OR

---

[6] The other subsections of § II.1 address an insured that
is: an individual; a partnership or joint venture; a limited
liability company; or a trust. [Policy at 19, § II.1.a-c, e.]

8

AGREEMENT" endorsement, L805 (05/09) ("Contract/Agreement Endorsement"), states:

    A.    Section II – Who Is An Insured is amended to include as an additional insured any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions, or the acts or omissions of those acting on your behalf:

        1.    In the performance of your ongoing operations for the additional insured; or

        2.    In connection with premises owned by or rented to you.

        But only for:

        1.    The limits of insurance specified in such written contract or agreement, but in no event for limits of insurance in excess of the applicable limits of insurance of this policy; and

        2.    "Occurrences" or coverages not otherwise excluded in the policy to which this endorsement applies.

    B.    Status as an additional insured for the person or organization to which this endorsement applies:

        1.    Commences during the policy period and after such written contract or agreement has been executed; and

2.   Ends when:

     a.   Your ongoing operations for that additional insured are completed;

     b.   The contractor's contract or agreement is terminated;

     c.   The lease of premises expires; or

     d.   Your policy cancels or expires;

whichever occurs first.

[Id. at 49 (emphases omitted).]

**B.**   **Relevant Exclusions**

The Insuring Agreement includes the following, which will be referred to as the "Watercraft Exclusion":

This insurance does not apply to:

. . . .

**g.**   **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

  (1) A watercraft while ashore on premises you own or rent;

  (2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge[.]

[<u>Id.</u> at 12, § 2 and 14, § 2.g (emphasis in original).]

The Policy also includes an endorsement setting forth an exclusion for events, Form L318 (11/10) ("Events Exclusion"):

  A. The following exclusion is added to 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability and Coverage C – Medical Payments:

    This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any "event" managed, operated or sponsored by the insured.

  B. The following definitions are added to the Definitions section:

    1. "Event" means any activity of an athletic or sports, or entertainment nature of "limited duration" that you manage, operate, or sponsor including, but not limited to, a carnival, circus, concert, contest, demonstration, exhibition, fair, game, match, parade, race, rodeo, show, stunting activity, or theatrical performance.

> 2. "Limited duration" means a time period
>    that can be established by a beginning
>    and ending date.

[Id. at 45 (emphases omitted).]

## DISCUSSION

## I. Applicable Law

Because federal jurisdiction in this case is based on diversity, this Court applies Hawai`i substantive law.[7]  See G & G Prods. LLC v. Rusic, 902 F.3d 940, 946 (9th Cir. 2018). Great Divide seeks summary judgment as to its duty to defend and its duty to indemnify Defendants, and the Club Defendants seek summary judgment as to the duty to defend HCC.  This Court will examine the issues presented by the parties in light of the following principles of Hawai`i insurance law.

> First, "insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." Dairy Rd. Partners v. Island Ins. Co., 92 Hawai`i 398, 411, 992 P.2d 93, 106 (2000) (brackets and citation omitted).  Thus, policy language "must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer."  92 Hawai`i at 412, 992 P.2d at 107 (alteration in original).  Second, pursuant to

---

[7] Although Great Divide also invoked the Declaratory Judgment Act as a basis for jurisdiction, [Complaint at ¶ 7,] "'[t]he operation of the Declaratory Judgment Act is procedural only' and does not confer arising under jurisdiction." See Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund, 636 F.3d 538, 543 (9th Cir. 2011) (quoting Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950)).

Hawai`i Revised Statutes § 431:10-237 (1993):
"Every insurance contract shall be construed
according to the entirety of its terms and
conditions as set forth in the policy, and as
amplified, extended, restricted, or modified by
any rider, endorsement or application attached to
and made a part of the policy."  Moreover,
"[b]ecause an insurer's duty to defend its insured
is contractual in nature, we must look to the
language of the policy involved to determine the
scope of that duty."  Sentinel [Ins. Co. v. First
Ins. Co. of Hawai`i], 76 Hawai`i [277,] 287, 875
P.2d [894,] 904 [(1994)].  "[W]henever the insurer
relies on an exclusionary clause of a policy as a
defense to liability, it has the burden of proving
facts which bring the case within the exclusion."
Quinn v. Wilshire Ins. Co., 53 Haw. 19, 21, 486
P.2d 59, 60 (1971).  In addition, any ambiguity in
an exclusionary clause is construed in favor of
the insured and "strictly construed against the
insurer."  Retherford v. Kama, 52 Haw. 91, 470
P.2d 517 (1970).

C. Brewer & Co. v. Marine Indem. Ins. Co. of Am., 135 Hawai`i

190, 196, 347 P.3d 163, 169 (2015) (some alterations in

C. Brewer).

"It is well settled that the duty to provide
coverage [*i.e.*, the duty to indemnify,] and the
duty to defend on the part of an insurer are
separate and distinct."  Sentinel Ins. Co., Ltd.
v. First Ins. of Hawai`i, Ltd., 76 Hawai`i 277,
291, 875 P.2d 894, 908 (1994) (citations omitted).
Moreover, the parties' respective burdens of proof
with respect to the duties to indemnify and to
defend are also distinct.

Dairy Rd., 92 Hawai`i at 412, 992 P.2d at 107 (alteration in

Dairy Rd.).  The Hawai`i Supreme Court has recognized that, when

the plaintiff-insurer in a declaratory judgment action seeks a

summary judgment ruling that it has no duty to defend the

defendant-insured, the "already heavy burden of proof as a movant

13

for summary judgment [i]s significantly augmented." See id. (citation omitted).

> "[T]he obligation to defend . . . is broader than the duty to pay claims and arises wherever there is the mere **potential** for coverage." Commerce [& Indus. Ins. Co. v. Bank of Hawai`i, 73 Haw. 322,] 326, 832 P.2d [733,] 735, [*reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992)] (emphasis added) (citations omitted). In other words, the duty to defend "'rests primarily on the **possibility** that coverage exists. This possibility may be remote but if it exists[,] the [insurer] owes the insured a defense.'" Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co., Ltd., 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982) (quoting Spruill Motors, Inc. v. Universal Under. Ins. Co., 212 Kan. 681, 686, 512 P.2d 403, 407 (1973)) (emphasis added). "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured[.]" Trizec Properties, Inc. v. Biltmore Constr. Co., 767 F.2d 810, 812 (11th Cir. 1985) (citing 7C Appleman, Insurance Law & Practice, 99-100 (Berdal ed. 1979)).

Sentinel Ins. Co., 76 Hawai`i at 287, 875 P.2d at 904 (brackets in original).

Accordingly, in connection with the issue of its duty to defend, Island [Insurance Co. ("Island")] bore the burden of proving that there was no genuine issue of material fact with respect to whether a possibility existed that [Dairy Road Partners ("DRP")] would incur liability for a claim covered by the policies. In other words, **Island was required to prove that it would be impossible for the [plaintiffs in the underlying lawsuits] to prevail against DRP in the underlying lawsuits on a claim covered by the policies**. Conversely, DRP's burden with respect to its motion for summary judgment was comparatively light, because it had merely to prove that a possibility of coverage existed. See Montrose

14

> Chemical Corp. of California v. Superior Court, 6
> Cal. 4th 287, 24 Cal. Rptr. 2d 467, 475, 861 P.2d
> 1153 (1993) (holding that "the insured need only
> show that the underlying claim **may** fall within
> policy coverage; the insurer must prove it **cannot**"
> (emphasis in original), and explaining that "[a]ny
> seeming disparity in the respective burdens merely
> reflects the substantive law").

Id. at 412-13, 992 P.2d at 107-08 (some alterations and some

emphases in Dairy Rd.) (footnote and some citations omitted).  An

insurer's "duty to defend must be determined, at least initially,

as of the time of [the insured]'s tender of its defense in the

underlying lawsuit[]."  See id. at 413, 992 P.2d at 108

(citations omitted).

**I.  HCRA and KCC**

Great Divide argues that neither HCRA nor KCC is an

insured under the Policy, and the Club Defendants have not

challenged this position.  See Countermotion at 10 n.2 (stating

the Club Defendants "at this time do not contest [Great Divide]'s

assertion that HCRA and KCC are not insureds under the Policy").

However, for the sake of completeness, this Court will address

whether HCRA and KCC are insureds.

HCC is "a non-profit organization under

Section 501(c)(3) of the Internal Revenue [C]ode and incorporated

under the laws of Hawai`i," and HCRA and KCC are the same type of

entity as HCC.  [Complaint at ¶¶ 2-4; Club Defs.' answer to

Complaint, filed 5/17/18 (dkt. no. 12), at ¶ 3 (admitting the

allegations in ¶¶ 2-4 of the Complaint).]  Because HCC is not a

15

partnership, joint venture, or limited liability company,

§ II.1.d of the Policy applies.  Under that provision, HCC's

executive officers and directors, HCC's volunteer workers, and

HCC's employees are also insureds.  [Policy at 19.]  HCRA and KCC

are separate organizations that do not meet any definition of an

additional insured under the Policy.  Even if HCC has members,

the Underlying Complaint does not allege, and there has been no

evidence presented that either HCRA or KCC is a member of HCC.[8]

Thus, the Member Endorsement does not apply.  Further, because

there is no evidence of a written contract or agreement between

either HCC and KCC or HCC and HCRA, the Contract/Agreement

Endorsement does not apply.

Based on the foregoing, there are no genuine issues of

material fact, and it would be impossible for the Underlying

Plaintiffs to prevail on a claim that is covered by the Policy

because neither HCRA nor KCC is an insured under the Policy.  See

___

[8] The Court notes that <u>United States Fire Insurance Co. v.
Hawaiian Canoe Racing Ass'ns, et al.</u>, CV 18-00212 LEK-RLP
("<u>US Fire</u>"), arises from a coverage dispute concerning whether
the Club Defendants and Stevens are covered under another policy
for the claims in the Underlying Action.  US Fire alleged HCC and
KCC are both members clubs of Maui County Hawaiian Canoe
Association, which is one of HCRA's Island Associations.
[<u>US Fire</u>, Complaint for Declaratory Judgment, filed 6/4/18 (dkt.
no. 1), at ¶¶ 3-4.]  However, the Club Defendants stated they
were unable to admit or deny those allegations because they are
vague.  [<u>Id.</u>, Club Defs.' answer to US Fire's complaint, filed
7/24/18 (dkt. no. 17), at ¶¶ 3-4.]  Even if HCC and KCC are
members of HCRA, that does not render KCC and HCRA members of
HCC.

<u>Dairy Rd.</u>, 92 Hawai`i at 412-13, 92 Hawai`i at 107-08.
Therefore, as a matter of law, Great Divide does not have a duty
to defend either HCRA or KCC.  Because the duty to defend is
broader than the duty to indemnify, <u>see</u> <u>Commerce & Indus.</u>, 73
Haw. at 326, 832 P.2d at 735, the absence of a duty to defend
also means Great Divide does not have a duty to indemnify either
HCRA or KCC.  Summary judgment is granted to Great Divide as to
these issues.  <u>See</u> Fed. R. Civ. P. 56(a).

## II.  **Stevens**

As previously noted, it is undisputed that Stevens
owned and operated the Ohana on the day of the 2016 Pailolo
Challenge.  Great Divide argues Stevens is not entitled to
coverage under the Policy because: he is not an additional
insured; or, if he is an additional insured, the Watercraft
Exclusion precludes coverage for the incident at issue in the
Underlying Action.

The Underlying Plaintiffs alleged KCC or its affiliate
hired Stevens for the 2016 Pailolo Challenge.  [Gallagher Decl.,
Exh. A (Underlying Complaint) at ¶ 8.]  In the course of the
Underlying Action, Stevens admitted that he was hired by
Catherine Bellafiore ("Bellafiore").  [Motion CSOF at ¶ 30;
Countermotion CSOF at pg. 3 (admitting that Great Divide's ¶ 30
accurately refers to Stevens' answers to interrogatories);
Gallagher Decl., Exh. C (Stevens's response to the Underlying

17

Plaintiffs' 3/6/18 request for answers to interrogatories, dated 5/1/18 by Stevens's counsel).] There is no evidence in the record that Bellafiore was an employee, servant, or agent of HCC. To the contrary, Bellafiore has been identified as a member and agent of KCC. See Countermotion CSOF, Decl. of Bruce H. Wakuzawa ("Wakuzawa Decl."), Exh. 3 (the 12/12/18 Pretrial Statement, filed by the plaintiffs in the underlying action regarding liability for the Incident) at 4, 11. Even if Stevens was a KCC employee acting within the scope of his employment, he is not an insured under the Policy because KCC is not an insured.

Moreover, even if this Court's consideration is limited to the allegations of the Underlying Complaint, Stevens would not be an insured. According to the Underlying Complaint:

> At all relevant times, Defendant Stevens was an employee, servant and/or authorized agent of Defendants HCRA, HCC and/or KCC acting within the course and scope of that relationship, such that Defendant HCRA, HCC and/or KCC are vicariously liable for the negligence of Defendant Stevens, as alleged herein, including under the doctrine of *respondeat superior*.

[Underlying Complaint at ¶ 19.] To the extent the Underlying Complaint alleges Stevens was an employee, servant, or agent of KCC or HCRA, Stevens would not be an insured because neither KCC nor HCRA is an insured. To the extent the Underlying Complaint alleges Stevens was an employee, servant, or agent of HCC, acting within the scope of his employment, he would be an insured under the Policy. See Policy at 19, § II.2.a. However, in that

18

instance, the Watercraft Exclusion would apply because Kalei-Imaizumi's claims in the Underlying Action would allege "'bodily injury' . . . arising out of the ownership, maintenance, use or entrustment to others of any watercraft owned or operated by or rented or loaned to any insured." <u>See</u> Policy at 14, § 2.g. Neither of the exceptions to the Watercraft Exclusion would apply because: based on the allegations of the Underlying Complaint, the Ohana was not ashore at the time of the injury; and the Ohana is twenty-six-feet long. <u>See</u> Motion CSOF at ¶ 8; Countermotion CSOF at pg. 2. Thus, even if Stevens is an insured under the Policy, the Watercraft Exclusion would apply and would preclude coverage of the claims against Stevens.

There are no genuine issues of material fact, and it is impossible for the Underlying Plaintiffs to prevail on a claim against Stevens that is covered by the Policy because either he is not an insured or, if he is an insured, the Watercraft Exclusion applies. Therefore, as a matter of law, Great Divide does not have a duty to defend Stevens. Because the duty to defend is broader than the duty to indemnify, the absence of a duty to defend also means Great Divide does not have a duty to indemnify Stevens. Summary judgment is granted to Great Divide as to these issues.

## III. HCC

### A. Watercraft Exclusion

First, if Stevens is an insured under the Policy and the Watercraft Exclusion applies to him, it would also preclude coverage for HCC. <u>See</u> Policy at 12, § 2 and 14, § 2.g (**"This insurance does not apply** to . . . "[b]odily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to **any insured**." (emphases added)). According to the plain language of the Watercraft Exclusion, if it applies, coverage is not available for any of the claims arising out of the incident in which Kalei-Imaizumi was injured. <u>See</u> <u>Dairy Rd.</u>, 92 Hawai`i at 411, 992 P.2d at 106.

### B. Events Exclusion

Even if the Watercraft Exclusion does not preclude coverage of the claims against HCC (because either Stevens is not an insured or, if he is an insured, the exclusion can be interpreted to apply only to him), this Court would still conclude that coverage is not available to HCC for the claims arising from Kalei-Imaizumi's injury because of the Events Exclusion.

### 1. **Manage, Operate, or Sponsor**

Based on the allegations in the Underlying Complaint, the 2016 Pailolo Challenge was an athletic or sports race of a limited duration. See Motion CSOF at ¶ 2 (stating the Underlying Complaint alleges the 2016 Pailolo Challenge took place on September 17, 2016); Countermotion CSOF at ¶ 2 (admitting Great Divide's ¶ 2); Motion CSOF at ¶ 3 ("The Pailolo Challenge is an annual 26 mile open ocean outrigger canoe race."); Countermotion CSOF at ¶ 3 (admitting Great Divide's ¶ 3 accurately quotes from the Underlying Complaint). The Club Defendants first argue the Events Exclusion does not preclude coverage because, based on the allegations of the Underlying Complaint, there is a possibility that the Events Exclusion is inapplicable to the claims in the Underlying Action because the 2016 Pailolo Challenge was not "managed, operated or sponsored by" HCC. See Policy at 45.

The Club Defendants admit that the Underlying Complaint alleges the 2016 Pailolo Challenge was the tenth time HCC had "hosted, organized and/or staged" the Challenge. [Motion CSOF at ¶ 4; Countermotion CSOF at pg. 2; Underlying Complaint at ¶ 14.] They also admit that the Underlying Complaint alleges HCC: "provided substantial labor and materials necessary to host, organize and stage the 2016 Pailolo Challenge"; and "had substantial control over and involvement in the staging of the race," including personnel decision, as well as the determination

and enforcement of race rules and regulations. [Motion CSOF at
¶ 6; Countermotion CSOF at pg. 2; Underlying Complaint at ¶ 17.]
However, the Club Defendants emphasize that the 2016 Pailolo
Challenge's marine ocean water event permit identifies HCRA as
the Challenge's sponsor. Further, the Underlying Plaintiffs
allege: "HCRA was an event sponsor, host and/or an organizer of
the 2016 Pailolo Challenge"; [Underlying Complaint at ¶ 6;] and
KCC or its affiliate retained Stevens's services for the
Challenge,[9] [id. at ¶ 8].

Even resolving all doubts in favor of HCC, see Sentinel
Ins., 76 Hawai`i at 287, 875 P.2d at 904, the Underlying
Complaint's allegations merely suggest that: HCRA was the sponsor
of the 2016 Pailolo Challenge; KCC hired Stevens for the
Challenge; although not the sponsor, HCC was the host of the
Challenge; and, as the host, HCC had significant
responsibilities. The fact that HCC was not the sponsor of the
2016 Pailolo Challenge does not render the Events Exclusion
inapplicable because the exclusion only requires that the
activity be one that the insured "manage[s], operate[s], **or**
sponsor[s]." See Policy at 45 (emphasis added). The Events
Exclusion applies if the insured does any one of the three

_____

[9] Subsequent developments in the Underlying Action have
supported this allegation, showing that Stevens was retained by
Bellafiore, who was acting as an agent of KCC. See Motion CSOF
at ¶ 30; Countermotion CSOF at pg. 3 & Countermotion CSOF at
¶ 14; Reply CSOF at ¶ 14.

things.  The terms "manage" and "operate" are interpreted
according to their plain and ordinary meanings because the Policy
does not indicate that different meanings were intended.  <u>See</u>
<u>Dairy Rd.</u>, 92 Hawai`i at 411, 992 P.2d at 106.  The Underlying
Complaint's description of HCC's duties in hosting the 2016
Pailolo Challenge fall within the plain and ordinary meaning of
"manage" and "operate."  <u>See</u> Black's Law Dictionary 1103-04 (10th
ed. 2014) (defining "manage" as: "1. To exercise executive,
administrative, and supervisory powers.  2. To conduct, control,
carry on, or supervise.  3. To regulate or administer a use or
expenditure."); Webster's Third New International Dictionary
1580-81 (2002) (defining "operate" as including: "to perform a
work or labor : expert power or influence : produce an effect";
and "to cause to occur : bring about by or as if by the exertion
of positive effort or influence").  Thus, there is no question
that the factual allegations of the Underlying Complaint support
Great Divide's position that the 2016 Pailolo Challenge was an
activity that HCC managed or operated.

The Club Defendants make much of paragraph 102 of the
Underlying Complaint, which alleges: "HCRA, HCC and/or KCC had a
duty to exercise reasonable care in sponsoring, hosting,
organizing, planning, staging and/**or** managing the 2016 Pailolo

Challenge."[10]  [Underlying Complaint at pg. 24 (emphasis added).]
The Club Defendants argue the use of "or" in paragraph 102 can be
interpreted to mean that HCC did not do any of those things, and
therefore it is possible that the Events Exclusion does not
apply.  [Countermotion at 12-13.]  The Club Defendants' argument
is misplaced.  The term "or" is used in the context of "HCRA, HCC
and/or KCC **had a duty**," [Underlying Complaint at ¶ 102 (emphasis
added),] which may mean that HCC did not have a duty.  The
allegation that HCC did not have a duty is a conclusory assertion
of law that is contrary to the factual allegations of the
Underlying Complaint regarding HCC's duties related to HCC's
hosting of the 2016 Pailolo Challenge.  The conclusory assertion
that HCC did not have a duty is not enough to negate the factual
allegations which support Great Divide's position that the 2016
Pailolo Challenge was an activity that HCC managed or operated.
See Hart v. Ticor Title Ins. Co., 126 Hawai`i 448, 458 n.19, 272
P.3d 1215, 1225 n.19 (2012) ("when the **facts** alleged in the
underlying complaint unambiguously exclude the possibility of
coverage, conclusory assertions contained in the complaint

---

[10] Paragraphs 106 and 109 also allege HCRA, HCC, and/or KCC
had a duty of care.  [Underlying Complaint at pgs. 25-26.]  In
addition, paragraph 115 alleges "HCRA, HCC and/or KCC owed a duty
to their members, including Faith [Kalei-Imaizumi], to provide
insurance coverage with respect to an injury the member might
suffer during a regatta or long distance race."  [Id. at pg. 27.]
This Court's analysis of the use of "or" in paragraph 102 also
applies to these paragraphs.

regarding the legal significance of those facts . . . are
insufficient to trigger the insurer's duty to defend" (emphasis
in <u>Hart</u>) (citation and some quotation marks omitted)).  The Club
Defendants' argument that HCC did not "manage, operate, or
sponsor" the 2016 Pailolo Challenge is rejected.  This Court
finds that the 2016 Pailolo Challenge was an "event" within the
meaning of the Events Exclusion.  <u>See</u> Policy at 45.

### 2.  Whether the Incident Occurred During the 2016 Pailolo Challenge

The Club Defendants also argue that, even if the 2016
Pailolo Challenge was an "event," the Events Exclusion does not
apply because Kalei-Imaizumi's accident did not occur while she
was participating in the event.  The Club Defendants emphasize
that Kalei-Imaizumi was not injured while she was paddling or
otherwise participating in the 2016 Pailolo Challenge; she
reentered the water to retrieve Stevens's hat "before her race
even started."  [Countermotion at 15 (emphases omitted)
(discussing Underlying Complaint at ¶¶ 24-25).]

The Events Exclusion states the Policy "does not apply
to 'bodily injury' . . . or medical payments arising out of any
'event.'"  [Policy at 45.]  The Hawai`i appellate courts have not
addressed insurance policy exclusions similar to the Events
Exclusion in the Policy that Great Divide issued to HCC.  In the
absence of controlling case law from the Hawai`i Supreme Court,
this Court must predict how the supreme court would decide the

25

issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  See Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011).

The parties argue this Court should apply the Hawai`i Supreme Court's analysis of the "arising out of" language in the automobile exclusions of CGL policies.  See Oahu Transit Servs., Inc. v. Northfield Ins. Co., 107 Hawai`i 231, 112 P.3d 717 (2005).  In Oahu Transit, the automobile exclusion stated there was no coverage for "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured."  107 Hawai`i at 232-33, 112 P.3d at 718-19 (alterations in Oahu Transit) (some internal quotation marks omitted).  The Hawai`i Supreme Court stated: "While the **applicability** of the phrase 'arising out of the ownership, maintenance, [or] use' is not entirely clear in every case, the phrase itself is unambiguous."  Id. at 235, 112 P.3d at 721 (brackets and emphasis in Oahu Transit).  Because the phrase "arising out of" was unambiguous, the supreme court interpreted it in the same way, regardless of whether the phrase appeared in a coverage clause or an exclusion.  Id. at 236, 112 P.3d at 722. The supreme court stated:

> In the context of an automobile insurance
> coverage clause, this court has applied the

26

following three-factor test to determine whether
injuries arose from the use or operation of a
motor vehicle:

> The first factor [is] whether the . . . motor
> vehicle was an active accessory in causing
> [the] plaintiff's injuries. . . .

> The second factor [is] whether there was an
> independent act breaking the causal link
> between "use" of the vehicle and the injuries
> inflicted. . . .

> The third factor [is] whether the injuries
> resulted from use of the vehicle for
> transportation purposes[.]

Chock v. Gov't Employees Ins. Co., 103 Hawai`i
263, 267-68, 81 P.3d 1178, 1182-83 (2003) (citing
AIG Hawai`i Ins. Co. v. Estate of Caraang, 74 Haw.
620, 640-41, 851 P.2d 321, 330-31 (1993)). . . .

Id. at 236-37, 112 P.3d at 722-23 (some alterations in Oahu

Transit) (footnote and some citations omitted).  The supreme

court held the first factor weighed in favor of the insurer

because: his wheelchair tipped over while the van was moving,

pinning him in a corner; and he was injured when the driver of

the van tried to help him out of that position.  Id. at 237, 112

P.3d at 723.  Although the van was not moving when the claimant

was injured, his injuries arose from the use or operation of the

van, in part, because "[t]he use of an automobile naturally

includes getting in and out of it."  Id. (internal quotation

marks and some citation omitted).  Because the second factor did

not weigh in favor of either party, and the third factor weighed

in favor of the insurer, the supreme court held that the

automobile exclusion applied because the claimant's injuries arose out of the use or operation of the van.  Id. at 237-38, 112 P.3d at 723-24.

Based on the supreme court's holding that the phrase "arising out of" is unambiguous and is interpreted in the same manner regardless of whether it appears in the coverage clause of an automobile insurance policy or in an automobile exclusion of another type of policy, this Court could apply the Oahu Transit analysis to the Events Exclusion in the instant case.  However, that analysis is an unsuitable mismatch in deciding event-based exclusions.  An automobile is vastly different from an event, and the type of injuries that "aris[e] out of the ownership, maintenance, use or entrustment to others of an[] . . . 'auto,'" see Oahu Transit, 107 Hawai`i at 232, 112 P.3d at 718 (some alterations in Oahu Transit) (some internal quotation marks omitted), would often not be the same type of injuries that "aris[e] out of an[] 'event,'" [Policy at 45].  Therefore, the injuries that a lay person would reasonably expect to be excluded because of an automobile exclusion likely would not be consistent with the injuries that a lay person would reasonably expect to be excluded because of an events exclusion.  Applying the Oahu Transit automobile exclusion analysis to an events exclusion may improperly result in coverage that is inconsistent with the reasonable expectations of a lay person.  See Dairy Rd., 92

28

Hawai`i at 412, 992 P.2d at 107 ("the rule is that policies are
to be construed in accord with the reasonable expectations of a
layperson" (citations and quotation marks omitted)).  This Court
therefore predicts that the Hawai`i Supreme Court would instead
adopt the analysis used by other courts that have addressed
exclusions for sporting or athletic events.  See, e.g., Nautilus
Ins. Co. v. Mobile Area Mardi Gras Ass'n, Inc. ("MAMGA"), Civil
Action No. 10-0025-W, 2010 WL 4269184, at *4-5 (S.D. Ala.
Oct. 27, 2010); and Zurich Reinsurance (London) Ltd. v. Westville
Riding Club, Inc., 82 F. Supp. 2d 1254, 1255-57 (E.D. Okla.
1999), aff'd sub nom. Zurich Reinsurance (London) Ltd. v.
Remaley, 203 F.3d 837 (10th Cir. 2000).

        James Curtis Remaley ("Remaley") was injured during a
rodeo that Westville Riding Club, Inc. ("Westville") sponsored.
Westville Riding, 82 F. Supp. 2d at 1254.  Remaley was a member
of the audience who was injured while voluntarily participating
in an event during the rodeo that required him to enter the arena
and try to remove a ribbon from a bull's horns.  Zurich
Reinsurance (London) Limited ("Zurich") sought a declaratory
judgment that the CGL policy it issued to Westville did not cover
Remaley's claims because of an exclusion regarding athletic or
sports participants.  Id. at 1254-55.  The exclusion provided
that the policy did "not apply to 'bodily injury' to any person
while practicing for or participating in any sports or athletic

29

contest or exhibition that you sponsor."[11]  Id. at 1255.  The

district court found the exclusion to be unambiguous, id. at

1257, and applied the following analysis to determine whether

Remaley's injuries fell within the scope of the exclusion:

> in order for an insurer to establish the
> applicability of a "Sports or Athletic
> Participant" exclusion, the insurer has the burden
> of proving the following elements:
>
> 1.   That the event in which the person was
> injured was a contest or exhibition;
>
> 2.   That the contest or exhibition was of an
> athletic or sports nature;
>
> 3.   That the contest or exhibition was
> sponsored by the named insured; and
>
> 4.   That the injured person was practicing
> for or participating in the contest or
> exhibition at the time of the injury.
>
> Garcia [v. St. Bernard Parish Sch. Bd.], 576 So.2d
> [975,] 976-77 [(La. 1991),] and Jefferson Ins. Co.
> of New York v. Sea World of Florida, Inc., 586
> So.2d 95, 97 (Fla. App. 1991).

Id. at 1256.  The district court concluded Zurich carried its

burden of proof because: the event during which Remaley was

---

[11] The Events Exclusion in this case – which excludes
coverage for, *inter alia*, "'bodily injury' . . . arising out of
any 'event'" – is broader than the exclusion in Westville Riding
– which refered to practice for, or participation in, an event
and MAMGA, discussed *infra*.  However, the analysis in those cases
is applicable to the instant case because Kalei-Imaizumi was a
participant in the 2016 Pailolo Challenge.  This Court does not
reach the issue of whether the Westville Riding and MAMGA
analyses would apply to the Events Exclusion in Great Divide's
Policy if the underlying action involved injuries sustained by
someone who was not a participant in the 2016 Pailolo Challenge.

injured was a contest; the contest was athletic or sporting in nature; Westville was the sponsor, or one of the sponsors, of the rodeo, which included the contest Remaley participated in; and Remaley was injured while participating in the contest. The district court therefore granted summary judgment in Zurich's favor. Id. at 1256-57.

In MAMGA, the policy's events exclusion "exclude[d] coverage for bodily injury (a) to 'any person while . . . participating in, any . . . demonstration, event, exhibition, . . . [or] show' or (b) to 'any person . . . while in the activity area such as . . . the pit, track, chute, corral or arena.'" 2010 WL 4269184, at *4 (some alterations in MAMGA). The district court concluded that the events exclusion unambiguously precluded coverage because: the parade was an event; the injured party, Dominic Tyer ("Tyer"), was a participant in the event because he rode on a float during the parade; and Tyer was injured while participating in the event because, at the time of the accident, he was helping another rider dismount the float. Id. at *4-5.

In the instant case, this Court has found that the 2016 Pailolo Challenge was an "event," as that term is defined in the Events Exclusion. In addition, Kalei-Imaizumi was a participant in the event. See Underlying Complaint at ¶ 8 (alleging Stevens was hired "to operate an escort boat for one of the KCC racing

31

teams entered in the 2016 Pailolo Challenge"); <u>id.</u> at ¶ 23
(alleging Kalei-Imaizumi "was part of the switch crew for the
outrigger canoe team to be escorted by Defendant Stevens").
Further, based on the analysis in <u>MAMGA</u>, Kalei-Imaizumi's injury
arose out of her participation in the event.  In <u>MAMGA</u>, Tyer
sustained his injury after the parade was over and while he was
helping another participant dismount the float.  2010 WL 4269184,
at *1.  Nevertheless, the district court concluded that "Tyer
unquestionably sustained his injuries while 'participating' in an
'event' and while 'in the activity area.'"  <u>Id.</u> at *4.  In the
instant case, when Kalei-Imaizumi was injured, the race had
already started, although the crew she was a part of was still in
the staging area.  Further, she swam out to the Ohana and boarded
it as part of her duties as a switch crew member.  <u>See</u> Underlying
Complaint at ¶ 23.  Before the Ohana began escorting its
designated canoe, Kalei-Imaizumi was injured while attempting to
reboard the Ohana after reentering the water to retrieve
Stevens's hat.  [<u>Id.</u> at ¶¶ 24-25.]  The instant case is similar
to <u>MAMGA</u> because the act the injured party was engaged in when
the injury occurred (Tyer helping other participants dismount
float and Kalei-Imaizumi reboarding the canoe) happened outside
of the injured party's participation in the event (Tyer's parade
was over and Kalei-Imaizumi's switch crew had not left the
staging area).  Nevertheless, the act was inextricably related to

the injured party's participation in the event.  In order for
Tyer and other participants to ride atop a float during the
parade, they had to dismount at some point; and, after Kalei-
Imaizumi reentered the water, in order for her to participate in
the Challenge, she had to reboard the Ohana and rejoin the switch
crew.  The reason why she reentered the water is irrelevant to
the analysis of whether the Events Exclusion applies.  Based on
the <u>MAMGA</u> analysis, the claims arising from Kalei-Imaizumi's
injuries are not covered, based on "the clear, unambiguous
language of the Events Exclusion."  <u>See</u> 2010 WL 4269184.

       The result is the same under the <u>Westville Riding</u> four-
part analysis.  First, the event in which Kalei-Imaizumi was
injured, the 2016 Pailolo Challenge, was a contest.  Second, it
was an athletic or sports contest.  Third, the 2016 Pailolo
Challenge was an event that HCC managed or operated.[12]  Fourth,
Kalei-Imaizumi was participating in the contest at the time of
the injury because she was boarding the Ohana, which was going to
transport the switch crew to meet the rest of the team in order
to compete in the contest.  Thus, under the <u>Westville Riding</u>

_____

       [12] The events exclusion in <u>Westville Riding</u> required
sponsorship.  <u>See</u> 82 F. Supp. 2d at 1255.  However, the Events
Exclusion in the instant case only requires that the insured
"manage[], operate[] or sponsor[]" the event, <u>see</u> Policy at 45,
and this Court has found that HCC managed or operated the 2016
Pailolo Challenge.  <u>See</u> *supra* Discussion § III.B.1.

analysis, Great Divide has carried its burden to prove that the
Events Exclusion applies to the claims in the Underlying Action.

If the Hawai`i Supreme Court adopted the analysis used
by other courts in evaluating policy exclusions for athletic or
sporting events, the supreme court would hold that the Events
Exclusion in this case is clear and unambiguous and precludes
coverage of the claims against HCC based upon Kalei-Imaizumi's
injuries.  However, the result would be the same, even if the
supreme court applied the <u>Oahu Transit</u> automobile exclusion
analysis, as modified to reflect the fact that the instant case
involves an event exclusion and not an automobile exclusion.[13]
<u>See</u> 107 Hawai`i at 236, 112 P.3d at 722.

First, the 2016 Pailolo Challenge was an active
accessory in causing Kalei-Imaizumi's injuries because the Ohana
was hired to be an escort vessel for the race team that Kalei-
Imaizumi was a part of, and Kalei-Imaizumi had to be aboard the
Ohana as part of her duties with her team's switch crew.  Second,
there was no independent act breaking the causal link between the
event and Kalei-Imaizumi's injuries.  Stevens's hat blowing into
the water and Kalei-Imaizumi reentering the water to retrieve the
hat did not break this causal link because, as discussed *supra* in

---

[13] The fact that the <u>Oahu Transit</u> analysis would need to be
modified to be applied in a case involving an events exclusion
supports this Court's conclusion that the analysis is an
unsuitable mismatch for this type of case.

the <u>MAMGA</u> analysis, the reason why Kalei-Imaizumi reentered the water is irrelevant because Kalei-Imaizumi needed to reboard the Ohana in order to compete in the 2016 Pailolo Challenge. Even if this Court is required to consider the reason why Kalei-Imaizumi reentered the water, her decision to retrieve the hat did not break the causal link because it was foreseeable. In an open ocean canoe race utilizing escort boats, it is foreseeable that: an item in a vessel may fall off into the water; someone on the vessel may enter the water to retrieve the item; and the person would have to reboard the vessel after retrieving the item. Third, Kalei-Imaizumi's injuries resulted from the event's intended purpose. The Ohana was a race escort vessel and one of its duties was to transport the Kalei-Imaizumi's switch crew. In order to be transported by the Ohana, Kalei-Imaizumi had to get in and out of the vessel. <u>Cf.</u> <u>Oahu Transit</u>, 107 Hawai`i at 237, 112 P.3d at 723 (2005). Applying the <u>Oahu Transit</u> factors, Kalei-Imaizumi's injuries arose out of the 2016 Pailolo Challenge, which this Court has previously found was an event managed or operated by HCC. Therefore, even if the Hawai`i Supreme Court held that the <u>Oahu Transit</u> analysis applies to insurance provisions like the Events Exclusion in this case, the Events Exclusion would still preclude coverage for the claims against HCC arising from Kalei-Imaizumi's injuries.

## 3. **Ruling**

There are no genuine issues of material fact, and it is impossible for the Underlying Plaintiffs to prevail on a claim against HCC that is covered by the Policy because either the Watercraft Exclusion or the Events Exclusion applies. Therefore, as a matter of law, Great Divide does not have a duty to defend HCC. Because the duty to defend is broader than the duty to indemnify, the absence of a duty to defend also means Great Divide does not have a duty to indemnify HCC. Summary judgment is granted to Great Divide as to these issues.

### CONCLUSION

On the basis of the foregoing, Great Divide's Motion for Summary Judgment, filed November 8, 2018, is HEREBY GRANTED and this Court CONCLUDES that Great Divide does not have a duty to defend, nor a duty to indemnify, Defendants. In light of these rulings, the Club Defendants' Counter Motion for Partial Summary Judgment Re: Duty to Defend and Stevens's joinder of simple agreement in the Countermotion, both filed on December 28, 2018, are HEREBY DENIED.

There being no remaining issues in this case regarding Great Divide's Complaint for Declaratory Judgment, filed April 17, 2018, the Clerk's Office is DIRECTED to terminate the parties to the Complaint on **April 3, 2019**, unless a timely motion

for reconsideration of this Order is filed.  A separate order will be issued regarding the cross-claim in this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 15, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**GREAT DIVIDE INSURANCE COMPANY VS. HAWAIIAN KAMALII, INC., ET AL; CV 18-00140 LEK-RLP; ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING COUNTERMOTION AND JOINDER TO THE COUNTERMOTION**